IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAWK VALLEY, INC., a Pennsylvania )
  Corporation, Individually and as the )
  Representative of a Class of Similarly )
  Situated Persons, )
 )
                    Plaintiff ) Civil Action
 ) No. 10-cv-00804
        v. )
 )
ELAINE G. TAYLOR, and )
ENVIRONMENTAL PROCESS SYSTEMS, INC., )
 )
                    Defendants )

* * *

APPEARANCES:

        ALAN C. MILSTEIN, ESQUIRE
        BRIAN J. WANCA, ESQUIRE
        PHILLIP A. BOCK, ESQUIRE
                On Behalf of Plaintiff

        FRANCIS J. DEASEY, ESQUIRE
        ATHENA O. PAPPA, ESQUIRE
                On Behalf of Defendant Elaine G. Taylor

        ERIC J. SAMORE, ESQUIRE
        THOMAS F. REILLY, ESQUIRE
        ALLAN SCHOLLER, ESQUIRE
                On Behalf of Defendant Environmental Process
                Systems, Inc.

* * *

**O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge

## TABLE OF CONTENTS

Page

SUMMARY OF DECISION............................................. 4

JURISDICTION................................................... 5

VENUE.......................................................... 5

PROCEDURAL HISTORY............................................. 5

STANDARD OF REVIEW............................................. 10

   **Federal Rule of Civil Procedure 23** ......................... 10

   **Telephone Consumer Protection Act** ......................... 13

FACTS.......................................................... 16

   **Parties** .................................................... 16

   **Business to Business Solutions** ............................ 18

   **InfoUSA** ................................................... 19

   **June 17, 2006 Fax Advertisement** ........................... 20

CONTENTIONS OF THE PARTIES..................................... 22

   **Contentions of Plaintiff** .................................. 22

      Rule 23(a) Requirements ................................. 22

      Rule 23(b)(3) Requirements .............................. 23

   **Contentions of Defendants** ................................. 24

      Rule 23(a) Requirements ................................. 24

      Rule 23(b)(3) Requirements .............................. 27

         *Predominance*................................... 27

         *Superiority*................................... 30

      Alternative Definition of Class ......................... 30

      Defendants' Supplemental Briefs ......................... 31

DISCUSSION..................................................... 32

   **Rule 23(a) Requirements** ................................... 32

      Numerosity .............................................. 32

      Commonality ............................................. 32

      Typicality .............................................. 34

      Adequacy ................................................ 35

         *Class Counsel*................................. 35

         *Class Representative*.......................... 37

   **Rule 23(b)(3) Requirements** ................................ 40

      Predominance ............................................ 40

         *Scope of Authority*............................ 48

         *Opt-Out-Notice Dispute*....................... 50

      Superiority ............................................. 57

CONCLUSION..................................................... 58

This matter is before the court on Plaintiff's Motion
for Class Certification filed July 19, 2013.[1]  For the reasons
expressed below, I grant the motion for class certification.[1]

---

[1]        Plaintiff's Motion for Class Certification (Document 98) was
filed together with

    (A)   Brief in Support of Plaintiff's Motion for Class Certification
        (Document 98-1)("Hawk Valley Brief"); and

    (B)   Exhibits A through R to Plaintiff's Motion for Class Certifica-
        tion (Documents 98-2 through 98-24).

        On August 16, 2013, Defendant Elaine G. Taylor's Answer in
Opposition to Plaintiff's Motion for Class Certification was filed (Docu-
ment 100)("Taylor Answer to Motion"), together with

    (A)   Defendant Elaine G. Taylor's Brief in Opposition to Plaintiff's
        Motion for Class Certification ("Taylor Brief")(Document 100-1);
        and

    (B)   Exhibits A through H to the Taylor Answer (Documents 100-3
        through 100-11).

        Also on August 16, 2013, Defendant, Environmental Process
Systems, Inc.'s Response in Opposition to Plaintiff's Motion for Class
Certification  was filed (Document 101)("EPSI Response to Motion"), together
with

    (A)   Memorandum of Law in Support of Defendant, Environmental Process
        Systems, Inc.'s Response in Opposition to Plaintiff's Motion for
        Class Certification ("EPSI Memorandum")(Document 101-3); and

    (B)   Exhibits A through N to the EPSI Response to Motion (Docu-
        ments 101-4 through 101-25).

        On November 7, 2013, with leave of court, Defendant, Elaine G.
Taylor's Supplemental Brief in Further Support of Her Response in Opposition
to Class Certification was filed ("Taylor Supplemental Brief")(Document 117),
together with

    (A)   Exhibits A and B to Taylor Supplemental Brief (Documents 117-1
        and 117-2).

        Also on November 7, 2013, with leave of court, Defendant,
Environmental Process Systems, Inc.'s Supplemental Brief in Further Support
of Its Response in Opposition to Class Certification was filed ("EPSI
Supplemental Brief")(Document 119), together with

    (A)   Exhibits A and B to EPSI Supplemental Brief (Documents 119-1 and
        119-2).

                        (Footnote 1 continued):

## SUMMARY OF DECISION

The within matter is a putative class action in which plaintiff Hawk Valley, Inc. ("Hawk Valley") asserts a claim, on its own behalf and on behalf of all others similarly situated, against defendants Elaine G. Taylor and Environmental Process Systems, Inc. ("EPSI") for sending an unsolicited facsimile advertisement to plaintiff and the putative class members on June 17, 2006 in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227.

In the within motion, plaintiff seeks to certify a class defined as "All persons sent one or more faxes on June 17, 2006 from 'Environmental Process Systems, Inc.' that advertised 'EPSI's Grass Grab-er' as a 'New way to treat your equipment wash water.'"[2]  Plaintiff requests the court to appoint it as the class representative and its attorneys, whose appearances are listed above, as class counsel.

Because plaintiff has demonstrated that the four requirements necessary for class certification under Rule 23(a) of the Federal Rules of Civil Procedure, and the two require-ments necessary for class certification under Rule 23(b)(3) are

---

(Continuation of footnote 1):

On November 8, 2013, a class certification hearing in the within action was held before me and, as described further in the Procedural History section below, the parties submitted additional materials concerning class certification following the November 8, 2013 hearing.

[2]     Plaintiff's Motion for Class Certification at page 1.

each satisfied here, I grant plaintiff's motion and certify the class.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 and upon the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## VENUE

Venue is proper because the events giving rise to plaintiff's claim allegedly occurred in the Borough of Denver, Lancaster County, Pennsylvania, which is within this judicial district.  See 28 U.S.C. §§ 118 and 1391(b)(2).

## PROCEDURAL HISTORY

Plaintiff initiated this putative class action on February 24, 2010 by filing its Class Action Complaint ("Class Complaint").[3]  On June 17, 2010 Defendants, Elaine G. Taylor and Environmental Process Systems, Inc.'s Motion to Dismiss Plaintiff's Complaint with Prejudice Pursuant to Fed.R.Civ.P. 12(b)(6)[4] was filed.

On February 28, 2011 I issued an Order and accompany-ing Opinion[5] dismissing plaintiff's Class Complaint with leave to

---

[3]        Document 1.

[4]        Document 12.

[5]        Documents 35 and 34, respectively.

file an amended complaint establishing this court's subject matter jurisdictions.

On March 25, 2011 plaintiff filed a First Amended Class Action Complaint[6] ("Amended Class Complaint").  On April 14, 2011 Defendants, Elaine G. Taylor and Environmental Process Systems, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6)[7] was filed.

On March 30, 2012 I issued an Order and accompanying Opinion[8] denying defendants' motion to dismiss plaintiff's Amended Class Complaint.  Defendants, Elaine G. Taylor and Environmental Process Systems, Inc.'s Answer and Affirmative Defenses to Plaintiff's First Amended Complaint[9] was filed on April 16, 2012.

I conducted a status conference pursuant to Rule 16 of the Federal Rules of Civil Procedure by telephone conference call on August 23, 2012.  The parties did not submit (separately or together) a report, or reports, of a pre-status-conference meeting prior to the August 23, 2012 status conference (as required by Rule 26(f) of the Federal Rules of Civil Procedure).

---

[6]          Document 36.

[7]          Document 37.

[8]          Documents 44 and 43, respectively.

[9]          Document 45.

Because the parties were unable to reach an agreement at the
August 23, 2012 conference, I directed the parties at the status
conference to exchange the mandatory self-executing discovery
disclosures require by Rule 26(a), and to submit a proposed
discovery plan as required by Rule 26(f) on or before August 31,
2012.  I also scheduled a second status conference for Septem-
ber 10, 2012.[10]

The parties were unable to agree upon a proposed
schedule and structure concerning this matter, and on August 24,
2012, plaintiff and defendants submitted separate proposed case
management plans.[11]

Upon consideration of the parties proposed plans, I
established, among other dates and deadlines, a June 21, 2013
deadline for completion of all class discovery, and a July 19,
2013 deadline for plaintiff to file a motion seeking class
certification pursuant to Rule 23 of the Federal Rules of Civil
Procedure.

On April 9, 2013 Defendant Elaine G. Taylor's Motion
for Summary Judgment was filed, seeking summary judgment in her
favor and against plaintiff on its claim against her in this

---

[10]        See Rule 16 Status Conference Order of the undersigned dated
August 23, 2012 and filed August 27, 2012 (Document 57).

[11]        Documents 56 and 55, respectively.

matter.[12]  On April 22, 2013 defendant Taylor filed a Motion for Leave to File Late Third Party Complaint.[13]

Plaintiff's Motion for Class Certification was filed on July 19, 2013, together with supporting materials.[14]  Defendants Taylor and EPSI each filed opposition documents in response to the motion for class certification on August 16, 2013.[15]

On September 25, 2013 Defendant, Environmental Process Systems, Inc.'s Motion to Dismiss For Lack of Subject Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1) was filed.  On September 26, 2013 Defendant, Elaine G. Taylor's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) was filed. [16]

I denied each defendant's respective motion to dismiss by (and for the reasons expressed in) my Order dated October 29, 2013 and filed October 30, 2013.[17]  I denied defendant Taylor's motion to file a late third-party complaint by (and for the reasons expressed in) separate Order dated October 29, 2013 and

---

[12]        Document 84.

[13]        Document 88.

[14]        See footnote 1, supra.

[15]        Defendants each filed supplemental materials in opposition to class certification with leave of court on November 7, 2013, in advance of the class certification hearing.  See footnote 1, supra.

[16]        Documents 105 and 106, respectively.

[17]        Document 108.

filed October 30, 2013.[18]  I denied defendant Taylor's motion for
summary judgment by (and for the reasons expressed in) an Order
dated and filed November 7, 2013.[19]

I held a hearing on Plaintiff's Motion for Class
Certification on November 8, 2013.  At the class certification
hearing, each party moved -- and in the absence of objection the
court received -- in evidence the exhibits upon which each
intended to rely in support of their respective positions
concerning class certification.[20]  The parties, through counsel,
then made closing arguments in support of their respective
positions concerning the issue of class certification.  At the
conclusion of the hearing, I took the matter under advisement.

---

[18]       Document 109.

[19]       Document 115.

[20]       The various exhibits introduced in evidence by the parties at the
November 8, 2013 hearing were among (and in the case of defendant Taylor, all
of) the exhibits filed by the parties together with the moving and opposition
documents in advance of the class certification hearing.  Accordingly, the
document numbers for the hearing exhibits below correspond to the docket
entry where each of the hearing exhibits is located and can be accessed on
the electronic docket in this matter.

       Specifically, plaintiff admitted in evidence Plaintiff's Exhibits
A through E (Documents 98-2 through 98-6, respectively); Plaintiff's Exhi-
bit G (Documents 98-10 through 98-13); and Plaintiff's Exhibit H (Docu-
ment 100-11).

       Defendant EPSI admitted in evidence EPSI Exhibits B and C
(Documents 101-5 and 101-6, respectively); EPSI's Exhibits F through J
(Documents 101-9 through 101-13, respectively); EPSI Exhibit K (Documents
101-14 through 101-20); EPSI Exhibit L (Document 101-21); and EPSI Exhibits
N-1 through N-3 (Documents 101-23 through 101-25, respectively).

       Finally, defendant Taylor admitted in evidence Taylor Exhibits A
through C (Documents 100-3 through 100-5, respectively); Taylor Exhibit D
(Documents 100-6 and 100-7); and Taylor Exhibits E through H (Documents 100-8
through 100-11, respectively).

At the November 8, 2013 hearing, counsel for each defendant requested seven days to submit a joint memorandum of law concerning an issue which arose during argument at the hearing.  I granted that request and gave defendants until November 15, 2013 to file a joint memorandum.  I gave plaintiff until November 22, 2013 to file a response to the joint memorandum to be filed by defendants.  Defendants' joint memorandum and plaintiff's response were timely filed on those dates.[21]

Additionally, while this matter has been under advisement following the November 8, 2013 hearing, plaintiff and defendants sought,[22] and I issued Orders granting,[23] leave to present additional case law which they contend is pertinent to the issue of class certification in this matter.

Hence this Opinion.

## STANDARD OF REVIEW

### Federal Rule of Civil Procedure 23

Rule 23 of the Federal Rules of Civil Procedure contains the prerequisites for class certification.  <u>Wal-Mart Stores, Inc. v. Dukes</u>, ___ U.S. ___, 131 S.Ct. 2541, 2548, 180 L.Ed.2d 374 (2011).  A class may be certified only if the

---

[21]        Documents 122 and 123, respectively.

[22]        Documents 124, 129, 131, 136, and 138.

[23]        Documents 126, 134, 135, 137, and 140.

court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23 have been satisfied. Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006).

To obtain class certification, plaintiffs must establish that each requirement of Rule 23(a) is met, together with one of the requirements of Rule 23(b). Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).

Pursuant to Rule 23(a), a class may be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

If the requirements of Rule 23(a) are satisfied, Rule 23(b) sets forth the types of class actions which may be maintained.

In this case, plaintiff moves for class certification pursuant to Rule 23(b)(3). Rule 23(b)(3) provides that a class may not be certified unless the court finds that the questions of law or fact common to the members of the class predominate

over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[24]

Accordingly, the requirements of Rule 23(b)(3) are known as predominance and superiority.  <u>In re: Hydrogen Peroxide Antitrust Litigation</u>, 552 F.3d 305, 310 (3d Cir. 2008).

In deciding whether the requirements of Rule 23 have been met to certify a class, the district court must make whatever factual and legal inquiries necessary and must consider all relevant evidence and arguments.  <u>Id.</u> at 307.

The requirements set forth in Rule 23 are not "mere pleading rules" and the court must "delve beyond the pleadings to determine whether the requirements for class certification

---

[24]     Specifically, Rule 23(b)(3) provides that a class action may be maintained if the requirements of Rule 23(a) are met and:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

are satisfied." <u>In re: Hydrogen Peroxide Antitrust Litigation</u>, 552 F.3d at 316.

Accordingly, a court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits -- including disputes touching on elements of the cause of action. <u>Id.</u> at 307. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. <u>Id.</u>

### Telephone Consumer Protection Act

In the within matter, plaintiff alleges that defendants violated the provision of the Telephone Consumer Protection Act governing advertisements sent by facsimile, 47 U.S.C. § 227(b)(1)(C), which provides that

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States --
>
> * * *
>
> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless --
>
> > (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
> >
> > (ii) the sender obtained the number of the telephone facsimile machine through --
> >
> > > (I) the voluntary communication of such number, within the context of such estab-

lished business relationship, from the
recipient of the unsolicited advertisement,
or

(II) a directory, advertisement, or site on
the Internet to which the recipient volun-
tarily agreed to make available its facsi-
mile number for public distribution,

except that this clause shall not apply in the
case of an unsolicited advertisement that is sent
based on an established business relationship
with the recipient that was in existence before
July 9, 2005, if the sender possessed the
facsimile machine number of the recipient before
such date of enactment; and

(iii) the unsolicited advertisement contains a
notice meeting the requirements under paragraph
(2)(D),

except that the exception under clauses (i) and (ii)
[to the prohibition on unsolicited advertisements]
shall not apply with respect to an unsolicited adver-
tisement sent to a telephone facsimile machine by a
sender to whom a request has been made not to send
future unsolicited advertisements to such telephone
facsimile machine that complies with the requirements
under paragraph (2)(E)[.]

47 U.S.C. § 227(b)(1).

The TCPA defines "unsolicited advertisement" as "any

material advertising the commercial availability or quality of

any property, goods, or services which is transmitted to any

person without that person's prior express invitation or

permission, in writing or otherwise."

47 U.S.C. § 227(a)(5).

The TCPA provides that, "for purposes only of subsection (b)(1)(C)(i)" of section 227, the term "established business relationship"

> shall have the meaning given the term in section 64.1200 of title 47, Code of Federal Regulations, as in effect on January 1, 2003, except that --
>
> > (A) such term shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber; and
> >
> > (B) an established business relationship shall be subject to any time limitation established pursuant to paragraph (2)(G).

47 U.S.C.A. § 227(a)(2).

The regulations promulgated by the Federal Communication Commission ("FCC") provide that

> [t]he term established business relationship means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(3).

-15-

## FACTS

Upon consideration of the pleadings, record papers, exhibits, declarations, and depositions, as required by the forgoing standard of review, the pertinent facts for purposes of class certification are as follows.

## Parties

Plaintiff Hawk Valley, Inc. ("Hawk Valley") is a Pennsylvania corporation with its principal place of business in Denver, Lancaster County, Pennsylvania.[25]  Hawk Valley operates a golf course in Denver, Pennsylvania.[26]

At the time the fax advertisement at issue here was sent, Hawk Valley was owned by James Fricke, Ph.D.  Dr. Fricke does not personally remember receiving that specific fax advertisement.[27]

Defendant Environmental Process Systems, Inc. is in the business of manufacturing and selling industrial wastewater treatment equipment.[28]  EPSI manufactures and sells a product

---

[25]      Amended Class Complaint at ¶ 8.

[26]      See Plaintiff's Exhibit A, Transcript of Deposition of Bennett W. Taylor, Jr. taken January 18, 2013 ("Bennett Taylor Deposition"), at pages 70-71.

[27]      Taylor Exhibit H, copy of Transcript of Deposition of James Fricke, Ph.D., taken April 19, 2013 ("Dr. Fricke Deposition"), at page 12.

[28]      Bennett Taylor Deposition at pages 6-7.

called the "Grass Grab-er" that filters wastewater through grass clippings for reuse.[29]

Bennett W. Taylor, Jr. -- husband of defendant Elaine G. Taylor (together, "the Taylors") -- was employed by EPSI during 2006 when the fax was transmitted.  Mr. Taylor remained an EPSI employee until 2009, when the Taylors sold EPSI to a company called Separator Solutions.[30]

Before the sale of EPSI, EPSI employed four people, including the Taylors.  Mr. Taylor, was President of EPSI.  Mrs. Taylor was the Secretary and Treasurer of EPSI.  EPSI also employed a man named John Hoke, and another serviceman.

The Taylors were the sole shareholders of EPSI, with Mrs. Taylor owning 51% of EPSI's stock and Mr. Taylor owning the other 49%.[31]

In 2006, Mrs. Taylor's duties and responsibilities involved "answer[ing] the phone" and covering "[a]ll clerical work" for EPSI.[32]  Mrs. Taylor did "[a]ny clerical work.  [She]

---

[29]     Bennett Taylor Deposition at page 40, and Taylor [Deposition] Exhibit #4.

[30]     Bennett Taylor Deposition at pages 6, 9-10, and 12.

[31]     Id. at pages 10-11.

[32]     Id. at page 17.

wrote the checks, paid the bills, [and] answered the telephone. [She] just did it all."[33]

EPSI had a business banking account at First Gaston Bank in Mt. Holly, North Carolina.  The Taylors were the only two people with check-writing authority over EPSI's account at that time, and only one of their signatures was required.  Mrs. Taylor typically wrote the checks for the business.[34]

### Business to Business Solutions[35]

From August 2005 until September 2007, Caroline Abraham was doing business under the name Business to Business Solutions ("B2B").  B2B worked with a Romanian business called Macaw, S.R.L. (hereafter "Macaw", but which also utilized the name "MaxiLeads") and was engaged in the business of fax advertising on behalf of businesses within the United States.  B2B's fax advertising business was coordinated from Brooklyn, New York.

Customers who engaged B2B to send fax advertisements would direct it to send faxes to a particular geographic

---

[33]      Plaintiff's Exhibit B, Transcript of Deposition of Elaine G. Taylor taken January 18, 2013 ("Elaine Taylor Deposition"), at page 4.

[34]      Bennett Taylor Deposition at pages 18-19.

[35]      These facts concerning Business to Business Solutions are based upon the following documents: Plaintiff's Exhibit C, Declaration of Caroline Abraham dated December 28, 2010, at ¶¶ 1-14; Plaintiff's Exhibit D, Declaration of Caroline Abraham dated March 10, 2013, at ¶¶ 1-7 and Bates numbers B2B000001 through B2B000019; and Plaintiff's Exhibit G, copy of Transcript of Deposition of Caroline Abraham taken June 23, 2013 ("Abraham Deposition"), at pages 6-17.

location or to a particular type of business.  Accordingly, B2B would select a target list of recipients from a database of contact information which B2B had purchased from an entity called InfoUSA in 2004.  B2B did not contact any of the businesses on the list that it purchased from InfoUSA to obtain express permission or invitation from those entities for B2B to send fax advertisements to them.

After B2B obtained approval of the copy and content of, and received payment for, the advertisement from its customer, B2B would cause the advertisement to be sent simultaneously, en masse over telephone lines which ran through computers in Ms. Abraham's home.

### InfoUSA[36]

InfoUSA is a vendor of business information which its customers purchase to utilize for various business-development and marketing purposes.  A business's fax number is among the numerous pieces of contact information InfoUSA collected from a variety of sources so it could sell that information to InfoUSA customers like B2B.

To increase the reliability (and thus the value) of the information it collects indirectly from various sources,

---

[36]         These facts concerning InfoUSA are based upon the following documents: Taylor Exhibit G, copy of Transcript of Deposition of Chris Fruehwald taken June 26, 2013 ("Fruehwald Deposition"), at pages 6-9, 12-29, and 33-39.

InfoUSA called businesses directly to verify the information it has already obtained.  Prior to 2011 (and in 2004 when B2B purchased contact information from InfoUSA), it was InfoUSA's practice verify the fax number for the businesses in its database and to ask for a business's fax number if InfoUSA did not already have that number at the time of the verification call.

Chris Fruehwald, Director of Compilation, testified that some of the businesses contacted by InfoUSA during the verification process would express interest in having their contact information made available to InfoUSA's customers.[37]

However, there is no record evidence that InfoUSA obtained express permission or invitation from any of the businesses in its database for those businesses to receive fax advertisements generally, or fax advertisements from B2B or from either defendant specifically.

### June 17, 2006 Fax Advertisement

The June 17, 2006 facsimile advertisement in this case was the first time that EPSI was involved with fax advertising.[38]

Earlier in 2006, EPSI was contacted by B2B.  EPSI responded to B2B's overture and entered into an agreement with B2B for B2B to send facsimile advertisements for the Grass Grab-

---

[37]        Fruehwald Deposition at pages 23-24.

[38]        Id. at pages 20-21.

er on EPSI's behalf. [39]  EPSI paid $387.20 to B2B for B2B to send more than 6,000 fax advertisements for EPSI's Grass Grab-er. [40]

In communications between EPSI and Kevin Wilson (identified by Caroline Abraham as a sales agent for Macaw), EPSI identified "[g]olf course superintendents" as the target of the advertisement and "emphasi[zed] that superintendents must be targeted" because "[t]he Pro shops do not buy or have any input on the purchase of Grass [G]rab-er™." [41]

EPSI did not furnish B2B with any of the fax numbers utilized in the June 17, 2006 transmission. [42]

The June 17, 2006 fax advertisement for EPSI's Grass Grab-er was sent successfully to 4,521 fax numbers, [43] including plaintiff Hawk Valley. [44]

The Taylors reviewed a sample of the businesses associated with 2,369 of the 4,521 fax numbers utilized in the June 17, 2006 transmission and identified 61 of 2,369 with whom

---

[39]      Fruehwald Deposition at pages 26-27, and 37-38.

[40]      Plaintiff's Exhibit D, Declaration of Caroline Abraham dated March 10, 2013, at ¶ 7.

[41]      Taylor Exhibit C, copy of letter dated June 1, 2006 from EPSI to Mr. Kevin Wilson at MaxiLeads, Brooklyn, New York.

[42]      Bennett Taylor Deposition at pages 36 and 40.

[43]      See Plaintiff's Exhibit E, Expert Report of Robert Biggerstaff dated March 2, 2011, at ¶ 11 and Exhibit 4.

[44]      EPSI Exhibit N-2, spreadsheet of purported recipients of the June 17, 2006 fax listing Hawk Valley, Inc. in Denver, Pennsylvania at number 1911.

EPSI had previously done, or was doing, business as of June 2006. From review of that same sample, the Taylors identified approximately 570 businesses which do not have a golf course on the premises.[45]

The record evidence does not suggest that Mrs. Taylor, any other employee or agent of EPSI, or any employee or agent of B2B obtained or received express permission or invitation from any of the recipients of the June 17, 2006 transmission for such recipients to receive advertisements by fax.

## CONTENTIONS OF THE PARTIES

### Contentions of Plaintiff

#### Rule 23(a) Requirements

Plaintiff contends that the numerosity requirement under Rule 23(a)(1) is satisfied because there is record evidence that fax advertisement at issue here was sent to, and received by, 4,521 unique fax numbers.[46]

Plaintiff contends that the commonality requirement under Rule 23(a)(2) is satisfied because defendants are alleged to have engaged in standardized conduct with respect to Hawk Valley and the putative class members. Moreover, plaintiff contends that there are common questions of fact concerning the

---

[45]     Taylor Exhibit D, Part 1, copy of sworn joint statement of Elaine G. Taylor and Bennet W. Taylor dated August 6, 2013, and Exhibit A to Taylor Exhibit D.

[46]     Hawk Valley Memorandum at page 14.

creation and sending of the fax advertisement, and common questions of law concerning the requirement for liability and the damages available under the federal Telephone Consumer Protection Act.[47]

Plaintiff contends that the typicality requirement under Rule 23(a)(3) is clearly satisfied because the claims of plaintiff and the putative class members are based upon the same legal theory (that is, that defendants Taylor and EPSI are each liable under the TCPA for the fax advertisement sent June 17, 2006).[48]

Plaintiff contends that the adequacy requirement under Rule 23(a)(4) is satisfied because Hawk Valley is interested in prosecuting this matter as a class action and does not have any conflicts with other putative class members.  In addition, plaintiff's attorneys have been litigating TCPA claims for many years, have been appointed a lead or co-lead class counsel in many cases, and will continue to devote adequate time and resources to the prosecution of this action.[49]

<u>Rule 23(b)(3) Requirements</u>

Plaintiff contends that the predominance requirement under Rule 23(b)(3) is satisfied here because "[i]n this case,

---

[47]        Hawk Valley Memorandum at pages 14-15.

[48]        <u>Id.</u> at pages 15-16.

[49]        <u>Id.</u> at pages 16-18.

no individualized issues are present."[50]  Specifically, plaintiff
asserts that "[p]laintiff's claims are identical to the claims
of the other class members" and "[b]ecause each class member is
entitled to statutory damages in the same amount, there will be
no need to conduct an individualized inquiry into the question
of damages."[51]

Finally, plaintiff contends that the superiority
requirement under Rule 23(b)(3) is satisfied here because (1)
common issues predominate plaintiff's claim and the claims of
the more-than-four-thousand putative class members, and (2) the
minor nature of the actual injury suffered and monetary recovery
available, together with the absence of a provision in the TCPA
awarding attorney fees to successful plaintiffs, combine to
render individual actions impractical and unfeasible.[52]

### Contentions of Defendants

#### Rule 23(a) Requirements

Defendants do not contest the numerosity requirement
of Rule 23(a)(1).  However, defendants contend that the
commonality, typicality, and adequacy requirements of
Rule 23(a)(2)-(4) are not satisfied.

---

[50]      Hawk Valley Memorandum at page 19.

[51]      Id.

[52]      Id. at pages 19-20.

Defendants contend that the commonality requirement of
Rule 23(a)(2) is not satisfied here.[53]   However, although
neither defendant expressly concedes that the commonality
requirement has been met, review of their answer, response,
exhibits and briefs in opposition to class certification demon-
strates that their arguments concerning the individualized
nature of the claim and defenses is primarily aimed at the more
stringent predominance and superiority requirements of
Rule 23(b)(3), and that the less-stringent commonality
requirement has been satisfied here.[54]

Defendants contend that the typicality requirement of
Rule 23(a)(3) cannot be satisfied here.  Defendants each argue
that typicality is unsatisfied because there are issues and
defenses individual to each potential class member.[55]
Defendants' typicality argument essentially restates their
commonality and predominance arguments.

Defendants also contend that the adequacy requirement
of Rule 23(a)(4) has not been satisfied.  Specifically,
defendants contend that Hawk Valley is not an adequate class
representative.  They make that argument because James Fricke,

---

[53]      EPSI Response to Motion at pages 1-2; Taylor Answer to Motion at
pages 1-2.

[54]      EPSI Memorandum at pages 7-19; Taylor Memorandum at pages 7-19.

[55]      EPSI Memorandum at pages 19-20; Taylor Memorandum at pages 7-9.

-25-

Ph.D., who owned Hawk Valley at the time the fax involved was sent in June 2006 (but has since sold Hawk Valley), testified at his deposition that he does not have a specific recollection of whether, or when, Hawk Valley received a fax advertisement from defendant EPSI.  Defendants both contend that because Hawk Valley (through Dr. Fricke) has no fundamental knowledge of the fax, the corporate plaintiff is essentially a pawn of plaintiff's counsel, and therefore is not an adequate class representative.[56]

Defendant EPSI further contends that Hawk Valley is not an adequate class representative because Hawk Valley signed a retainer agreement which provides that Hawk Valley will not oppose the anticipated request of putative-class counsel for a fee award of one-third of any recovery obtained by the class.[57]

Although EPSI states that it will "focus upon the adequacy of Plaintiff, Hawk Valley", EPSI nonetheless notes that "many other TCPA cases arising from the activities of [Business to Business Solutions] have challeng[ed] the actions of Plaintiff['s] counsel".[58]

---

[56]        Taylor Memorandum at pages 20-21; EPSI Memorandum at pages 4-6.

[57]        EPSI Memorandum at page 7.

[58]        Id. at page 5 n. 1 (citing Machesney v. Lar-Bev of Howell, Inc., 292 F.R.D. 412 (E.D.Mich. 2013), and Creative Montessori Learning Centers v. Ashford Gear LLC, 662 F.3d 913 (7th Cir. 2011)).

Rule 23(b)(3) Requirements

*Predominance*

Defendant EPSI contends that the predominance requirement under Rule 23(b)(3) is unsatisfied because "the claim asserted by plaintiff and the putative class members requires investigation into numerous individualized inquiries specific to potential class members such that predominance cannot be satisfied."[59]  Similarly, defendant Taylor contends that the predominance requirement is not met because "[a] comprehensive, detailed individual assessment of each of the 4,521 businesses who allegedly received the fax at issue is required."[60]

Defendant EPSI contends that the defenses available to it under the Telephone Consumer Protection Act, 47 U.S.C. § 227, will require individualized inquiries regarding each potential class member.  Specifically, defendant EPSI contends that, for an advertisement to be considered "unsolicited", it must have been sent "without [the recipient]'s prior express invitation or permission, in writing or otherwise".  Accordingly, EPSI argues, an individualized inquiry is required for each potential class

---

[59]          EPSI Memorandum at page 7.

[60]          Taylor Memorandum at page 8.

member to determine whether the potential class member gave

"express invitation or permission, in writing or otherwise".[61]

Defendant EPSI makes the same individualized-inquiry

argument about the three "unless" conditions -- that is, section

227(b)(1)(C)(i) to (iii) quoted above -- which exclude certain

advertisements from section 227(b)(1)(C)'s prohibition.  In

other words, EPSI argues that an individual inquiry is required

for every potential class member to determine whether each of

the three necessary requirements of § 227(b)(1)(C)(i) to (iii)

is met and the advertisement is thus prohibited by section

227(b).[62]

Defendant Taylor similarly argues against predomi-

nance, and focusses on the necessity of individualized inquiry

into whether (1) EPSI had a pre-existing business relationship

with each potential class member and (2) the recipient

voluntarily made its fax number available for public

distribution.[63]

Additionally, defendant EPSI contends that B2B only

had authority to send the advertisement to a narrow category of

recipients (namely, golf-course superintendents) and that B2B

---

[61]     EPSI Memorandum at pages 8-12; see 47 U.S.C. § 227(a)(5)(defining "unsolicited advertisement").

[62]     EPSI Memorandum at pages 8-12; see § 227(b)(1)(C)(i)-(iii).

[63]     Taylor Memorandum at pages 9-15, and 18-20.

greatly exceeded the scope of its authority in transmitting the
fax.  Therefore, defendant EPSI argues, an individualized
inquiry will be required to determine whether each potential
class member was a recipient within the scope of authority
granted to B2B, or whether B2B essentially acting on its own
(without authority from defendants) by sending the advertisement
to a particular class member.[64]  Defendant Taylor also makes this
argument.[65]

Defendant EPSI also contends that individualized
inquiries are required for each potential class member to
determine whether that class member actual received a fax
transmission from EPSI through B2B, or, rather, whether the fax
transmission from B2B was received by a third-party messaging
service, converted into email form, and then sent to the final
recipient in email form.[66]   Defendant Taylor does not make this
argument in her memorandum.[67]

Finally, defendant EPSI contends that plaintiff has
not shown that any of the 4,521 potential class members
(1) owned the fax machine or other equipment which received the
alleged June 17, 2006 fax advertisement, and (2) is currently

---

[64]        EPSI Memorandum at pages 14-16.

[65]        Taylor Memorandum at pages 15-17.

[66]        EPSI Memorandum at pages 16-19.

[67]        Taylor Memorandum at pages 6-25.

the owner of the same fax number.[68]  Defendant Taylor does not

make this argument in her memorandum.[69]

<em>Superiority</em>

Defendants also contend that the superiority require-

ment of Rule 23(b)(3) is unsatisfied.  Specifically, each argues

that a class action is not a superior method of resolving this

dispute because the individualized issues addressed in the

predominance arguments will require mini-trials for each class

member.[70]  As with defendants' arguments concerning commonality

and typicality, defendants' argument concerning superiority

overlaps substantially with their argument that individual

issues predominate over common issues in this case.

Alternative Definition of Class

The definition of the class to be certified, as

proposed by plaintiff, and approved in the Order accompanying

this Opinion, is:

> All persons sent one or more faxes on June 17, 2006
> from "Environmental Process Systems, Inc." that
> advertised "EPSI's Grass Grab-er" as a "New way to
> treat your equipment wash water."

In their respective memoranda, both defendants further

contended that, in the event Plaintiffs' Motion for Class Certi-

---

[68]        EPSI Memorandum at page 18.

[69]        Taylor Memorandum at pages 6-25.

[70]        EPSI Memorandum at pages 20-21; Taylor Memorandum at pages 21-24.

-30-

fication were granted, the class definition proposed by plaintiff should be modified.[71]  Defendant EPSI provides the following alternative definition:

> All persons or entities serving as a golf-course superintendent which received a facsimile on June 17, 2006, on a telephone facsimile machine which it owned, from Environmental Process Systems, Inc. advertising EPSI's Grass Grab-er as a "New way to treat your equipment wash water" who: (1) did not have a pre-existing business relationship with EPSI as defined by 47 U.S.C. § 227(b)(1)(C)(i); and (2) did not agree to make is fax number available for public distribution through a directory, advertisement, or site on the internet.[72]

Defendants' Supplemental Briefs

Defendants contend in their supplemental briefs that the additional case law cited therein provides further support for their proposition that the individualized inquiries which would be required concerning each potential class member predominate and, thus, warrant a denial of the motion for class certification.[73]  Defendants further contend that the proposed class is not readily ascertainable based upon plaintiff's proposed class definition.[74]

---

[71]     EPSI Memorandum at pages 21-22 n.8; Taylor Memorandum at pages 24-25 n.5.

[72]     EPSI's alternative proposed Order (Document 101-2).

[73]     EPSI Supplemental Brief at pages 2-8.

[74]     EPSI Supplemental Brief at pages 8-9.

## DISCUSSION

## Rule 23(a) Requirements

### Numerosity

Satisfaction of the numerosity requirement does not require evidence of the exact number or identification of the members of the proposed class.  Saunders v. Berks Credit and Collections, Inc., 2002 U.S.Dist. LEXIS 12718 at *16 (E.D.Pa. July 12, 2002)(DuBois, S.J.).  Rather, the proposed class must be so numerous that joinder is impracticable.  Id.

Defendants do not contend, and could not plausibly contend (given the number of purported recipients (4,521) of the June 17, 2006 fax advertisement), that plaintiff fails to satisfy the numerosity requirement.

### Commonality

Commonality requires a showing of the existence of questions of law or fact common to the class.  A common question is one arising from a common nucleus of operative facts.  Saunders, 2002 U.S.Dist. LEXIS 12718 at *17.  Generally, where defendants have engaged in standardized conduct towards members of the proposed class, common questions of law and fact exist.  Id.  In fact, a single common question is sufficient to satisfy this requirement.  Id. (citing In re Prudential Insurance Company, 148 F.3d 283, 310 (3d Cir. 1998)).

The commonality requirement itself is not an onerous one, and the United States Court of Appeals for the Third Circuit has recognized that the less-stringent test of commonality is subsumed by the more-stringent predominance requirement.  <u>Georgine v. Amchem Products, Inc.</u>, 83 F.3d 610, 626-627 (3d Cir. 1996).

As noted in the above section concerning defendants' contentions regarding commonality, neither defendant expressly concedes that the commonality requirement has been met here. However, review of their answer, response, exhibits, and briefs in opposition to class certification demonstrates that their arguments concerning the individualized nature of the claim and defenses is primarily aimed at the more stringent predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3), and that the less-stringent commonality requirement has been satisfied here.[75]

I conclude that plaintiff has satisfied the common-ality requirement imposed by Rule 23(a)(a).  Specifically, both EPSI and Mrs. Taylor contend that B2B exceeded the scope of authority granted to it by sending the fax to recipients other than golf-course superintendents.[76]  The questions of what the scope of B2B's authority was vis-à-vis EPSI, and whether B2B's

---

[75]        EPSI Memorandum at pages 7-19; Taylor Memorandum at pages 7-19.

[76]        Taylor Memorandum at pages 15-17; EPSI Memorandum at pages 14-16.

conduct exceeded the scope of that authority, are common
questions which satisfy the commonality requirement.

### Typicality

The third element of Rule 23(a) requires that the
claims or defenses of the representative parties are typical of
the claims or defenses of the class.  Fed.R.Civ.P. 23(a)(3).

"If a plaintiff's claim arises from the same event,
practice or course of conduct that gives rise to the claims of
the class members, factual differences will not render that
claim atypical if it is based on the same legal theory as the
claims of the class."  Marcus v. BMW of North America,
687 F.3d 583, 598 (3d Cir. 2012)(citing Hoxworth v. Blinder,
Robinson & Co., 980 F.2d 912, 913 (3d Cir. 1992)).

In a nutshell, the court must be satisfied that "the
incentives of the [class representatives] are aligned with those
of [the absentees]."  Beck v. Maximus, Inc., 457 F.3d 291, 295-
296 (3d Cir. 2006).  Stated another way, in determining whether
the typicality requirement is met, a court must consider
"whether the named plaintiffs' claims are typical, in common-
sense terms, of the class, thus suggesting that the incentives
of the plaintiffs are aligned with those of the class."
Saunders, 2002 U.S.Dist. LEXIS 12718 at *19.

I conclude that the typicality requirement is satis-
fied in this matter because plaintiff is, and the putative class

members would be, asserting the same legal claim (that
defendants violated 47 U.S.C § 227(b)(1)(C)) against the same
defendants (Mrs. Taylor and EPSI) based upon the same incident
(the June 17, 2006 fax transmission).

<u>Adequacy</u>

Adequacy is satisfied by showing that (1) class
counsel is competent and qualified to conduct the litigation;
and (2) class representatives have no conflicts of interests.
See <u>New Directions Treatment Services v. City of Reading</u>,
490 F.3d 293, 313 (3d Cir. 2007).

*Class Counsel*

Although defendant EPSI states that it will "focus
upon the adequacy of Plaintiff, Hawk Valley", defendant EPSI
notes that "many other TCPA cases arising from the activities of
B2B have challeng[ed] the actions of Plaintiff['s] counsel".[77]

Although the district court in <u>Machesney</u> and the
Seventh Circuit in <u>Creative Montessori</u> each expressed misgivings
about the conduct of the Anderson + Wanca firm and Attorney
Wanca in particular, Attorneys Milstein and Bock (plaintiff's
other counsel) are each (as defendant EPSI acknowledges)
affiliated with firms other than Anderson + Wanca.  Defendant

---

[77]        EPSI Memorandum at page 5 n. 1 (citing <u>Creative Montessori
Learning Centers v. Ashford Gear LLC</u>, 662 F.3d 913 (7th Cir. 2011), and
<u>Machesney v. Lar-Bev of Howell, Inc.</u>, 292 F.R.D. 412 (E.D.Mich. April 22,
2013)).

EPSI does not challenge the adequacy of either Attorney Milstein or Attorney Bock.

Moreover, the district court in <u>Machesney</u> did not state that it would have disqualified Attorney Wanca from serving as class counsel based upon his conduct, <u>see</u> <u>Machesney</u>, 292 F.R.D. at 424.  More importantly, when considering the question on remand from the Seventh Circuit, the district court in <u>Creative Montessori</u> found that the voluminous supplemental evidence submitted by the parties did not actually reveal misconduct by Attorney Wanca and noted that multiple district court have found Attorney Wanca to be adequate class counsel even after the Seventh Circuit's previous Opinion in that case. <u>See</u> <u>Creative Montessori Learning Center v. Ashford Gear, LLC</u>, 2012 U.S.Dist. LEXIS 128203, at *4-7 (N.D.Ill. Sept. 10, 2012).

For the reasons expressed above (and based upon the qualifications set forth in the thorough resumes submitted by Attorneys Milstein, Wanca, and Bock)[78], to the extent defendants challenge the adequacy of counsel for the proposed class, I find their argument unavailing, and I conclude that Attorneys Milstein, Wanca, and Bock are each competent to act as class counsel.

---

[78]     Plaintiff's Motion for Class Certification, Exhibit R (Document 98-24).

*Class Representative*

As noted above, defendants contend that Hawk Valley is not an adequate class representative.  They argue that Dr. Fricke (who owned Hawk Valley at the time the fax involved was sent, but has since sold Hawk Valley) testified at his deposition that he does not have a specific recollection of whether, or when, Hawk Valley received a fax advertisement from defendant EPSI.  Defendants both contend that because Hawk Valley (through Dr. Fricke) has no fundamental knowledge of the fax, the corporate plaintiff is essentially a pawn of plaintiff's counsel, and therefore not an adequate class representative.[79]

However, defendants have not provided, and I am not aware of any, authority establishing a requirement that a recipient or a recipient's representative (in the case of a business-entity recipient) have direct personal knowledge of the individual fax transmission involved in an action under the TCPA based on an unsolicited fax advertisement.

Here, given the fact that plaintiff's putative evidence of the June 17, 2006 fax transmission is based upon documents and electronic records, I conclude that Dr. Fricke's deposition testimony indicating that he does not personally

---

[79]        Taylor Memorandum at pages 20-21; EPSI Memorandum at pages 4-6.

remember whether, or when, Hawk Valley received the June 17, 2006 fax advertisement for EPSI's Grass Grab-er product does not render Hawk Valley an inadequate class representative.

Defendant EPSI further contends that Hawk Valley is not an adequate class representative because Hawk Valley signed a retainer agreement which provides that Hawk Valley will not oppose the anticipated request of its attorneys for a fee award of one third of any recovery obtained by the class.[80]

In Machesney v Lar-Bev of Howell, Inc., 292 F.R.D. 412, 425 (E.D.Mich. April 22, 2013), the district court called the putative class plaintiff's assent to the one-third fee agreement and waiver of plaintiff's right to contest the amount of the fee "troubling...in light of the repetitive nature of these actions and considering the amount of work actually performed by Counsel in relation to the settlement and/or judgments that have been obtained in other [TCPA] cases". Nevertheless, the court did not find plaintiff to be an inadequate class representative on that ground.  See id. at 425-433 where the district court denied class certification based upon lack of a sufficiently ascertainable class and the predominance of individualized issues.

Defendant EPSI does not explain how or why plaintiff Hawk Valley's entry into a one-third contingent-fee agreement

---

[80]         EPSI Memorandum at page 7.

creates a conflict of interest between plaintiff and the putative class members.  While it may be argued that plaintiff should not have foregone a future right to contest a fee award in this matter, plaintiff did not attempt to bind any putative class members to the fee agreement into which it entered, nor did plaintiff purport to waived the right of class members to object to any future fee award to class counsel in this matter. For these reasons, I conclude that the fee agreement entered into by plaintiff does not render plaintiff an inadequate representative of the putative class.

In sum, plaintiff's has sufficiently demonstrated both that its attorneys are competent to represent the putative class, and that plaintiff is interested in, and capable of, diligently prosecuting this action, and does not have interests which conflict with those putative class members which it seeks to represent here.

For all of the foregoing reasons, I conclude that plaintiff has satisfied the necessary requirements for class certification set forth in Rule 23(a) of the Federal Rules of Civil Procedure.

## Rule 23(b)(3) Requirements

### Predominance

As noted above, plaintiff contends that the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) is satisfied because "[p]laintiff's claims are identical to the claims of the other class members" and "[b]ecause each class member is entitled to statutory damages in the same amount, there will be no need to conduct an individualized inquiry into the question of damages."[81]

Defendants contend that the predominance requirement is unsatisfied here because of individualized determinations which will have to be made with respect to each class member in order to determine if each class member can sustain an unsolicited-fax-advertisement claim against defendants Taylor and EPSA under 47 U.S.C. § 227(b)(1)(C).

Those inquiries, according to defendants, include whether each putative class member (1) gave "express permission, in writing or otherwise" to receive fax advertisements from defendants; (2) had an existing business relationship with EPSI prior to the June 17, 2006 fax transmission; (3) made its fax number available for public distribution; (4) was within the scope of the authority given to B2B to send fax advertisements

---

[81]         Hawk Valley Memorandum at page 19.

for EPSI's Grass Grab-er to golf-course superintendents; and (5) actually received the June 17, 2006 fax transmission.[82]

The parties have not provided, and I am not aware of any, controlling authority from the United States Court of Appeals for the Third Circuit regarding class certification in a TCPA unsolicited-fax case, or the narrower issue of predominance in such a case.

Defendants understandably highlight the decisions of courts in cases involving TCPA unsolicited-fax advertisement claims which have found individual issues to predominate in such cases and, accordingly, have denied motions for class certification.[83]

However, a substantial body of case law supports the opposite conclusion. Specifically, numerous district courts have found that although TCPA unsolicited-fax cases do present

---

[82]      EPSI Memorandum at page 7.

[83]      See, e.g., UESCO Industries, Inc. v. Poolman of Wisconsin, Inc., 993 N.E.2d 97, 108-116 (Ill.App.Ct. 2013)(denying class certification in an a case involving defendant's use of B2B in fax advertising); Bridging Communities, Inc. v. Top Flite Financial, Inc., 2013 WL 2417939, at *2 (E.D.Mich. June 3, 2013)(relying on Forman, infra, to deny class certification in TCPA unsolicited fax advertisement case); Compressor Engineering Corporation v. Manufacturers Financial Corp., 2013 U.S.Dist. LEXIS 59849, at *35-63 (E.D.Mich. April 26, 2013)(Cox, J.) (denying class certification in an a case involving defendant's use of B2B in fax advertising); APB Associates, Inc. v. Bronco's Saloon, Inc., 2013 U.S.Dist. LEXIS 59852, at *36-63 (E.D.Mich. April 26, 2013)(Cox, J.) (same); Machesney v. Lar-Bev of Howell, Inc., 292 F.R.D. 412, 425-433 (E.D.Mich. 2013)(Cox, J.) (same); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404-405 (E.D.Pa. 1995)(Giles, J.) (denying class certification in TCPA unsolicited-fax advertisement case).

some individualized issues, common issues of law and fact

predominate, and, thus, have granted class certification.[84]

In addition to the district court decisions concerning

class certification in similar cases involving the utilization

by defendants of B2B in fax advertising efforts (which I find

persuasive concerning the within motion), two cases from the

United States Court of Appeals for the Seventh Circuit --

Reliable Money Order, Inc. v. McKnight Sales Co., 704 F.3d 489

(7th Cir. 2013)("Reliable Money II"), and Ira Holtzman, C.P.A.,

& Associates Limited v. Turza, 728 F.3d 682(7th Cir. 2013) --

provide further authority favoring the certification of a class

in the within matter.

In Reliable Money Order, Inc. v. McKnight Sales

Company, Inc., 281 F.R.D. 327 (E.D.Wisc. 2012)("Reliable

---

[84]     See, e.g., City Select Auto Sales, Inc. v. David Randall
Associates, Inc., 2013 U.S.Dist. LEXIS 178950, at *37-41 (D.N.J. December 20,
2013)(granting class certification in a case involving defendant's use of B2B
in fax advertising); A&L Industries, Inc. v. P. Cipollini, Inc.,
2013 U.S.Dist. LEXIS 142643, at *10-12 (D.N.J. October 2, 2013)(same); The
Siding and Insulation Co. v. Beachwood Hair Clinic, 279 F.R.D. 442, 446
(N.D.Ohio 2012)(same); Imhoff Investment, LLC v. SamMichaels, Inc.,
2012 U.S.Dist. LEXIS 148049, at *8-9 (E.D.Mich. October 1, 2012)("Imhoff I")
(same); Creative Montessori Learning Center v. Ashford Gear, LLC,
2011 U.S.Dist. LEXIS 83419, at *18-20 (N.D.Ill. July 27, 2011)(same), rev'd
on appeal, 662 F.3d 913, 918-919 (7th Cir. 2011)(addressing legal standard
applicable to assessment of adequacy of class counsel and remanding for
further proceedings), class cert. granted on remand, 2012 U.S.Dist.
LEXIS 128203, at *9 (N.D.Ill. September 10, 2012); American Copper & Brass,
Inc. v. Lake City Industrial Products, Inc., 2012 U.S.Dist. LEXIS 102207, at
*10-16 (W.D.Mich. July 24, 2012)(granting class certification in a case
involving defendant's use of B2B in fax advertising); CE Design Ltd. v. Cy's
Crabhouse North, Inc., 259 F.R.D. 135, 143 (N.D.Ill. 2009)(same); see also
Hinman v. Italia Foods, Inc. v. M and M Rental Center, Inc.,
545 F.Supp.2d 802, 807-808 (N.D.Ill. 2008)(granting class certification in
case where defendant used a third-party advertiser to send fax
advertisement).

Money I"), the district court granted plaintiff's motion for
class certification in a similar TCPA unsolicited-fax case where
defendant authorized B2B to send a fax advertisement for
discounted magazine subscriptions.  Reliable Money I, 281 F.R.D.
at 330.  The fax advertisement at issue there was sent in April
2006 and plaintiff did not remember receiving the specific fax.
Id.  There, as here, plaintiff's counsel learned through
electronic records (obtained from B2B) that the fax had been
sent to Reliable Money.  See Reliable Money I, 281 F.R.D. at
330.

        With respect to defendant's argument in Reliable Money
that individualized issues predominated and, thus, that class
certification was inappropriate, the district court acknowledged
that individual issues might arise:

> The individual issues that the court foresees relate
> to the need to determine whether some of the recipe-
> ents gave permission to receive the faxes prior to
> transmission or whether individual plaintiffs had an
> established business relationship with the defendant
> before receiving the fax at issue in this case.

Reliable Money I, 281 F.R.D. at 338.

        In other words, the district court in Reliable Money
considered the core individualized issues presented by
defendants here in opposition to certification and determined
that class certification was appropriate despite the existence
of some individualized issues because, in the context of the

-43-

action as a whole, those individual issues were "minor and [could] certainly be handled within the framework of a class action." Reliable Money I, 281 F.R.D. at 338.

Following the district court's decision to grant class certification in Reliable Money I, defendant appealed. Although the primary dispute on appeal concerned alleged misconduct by putative class counsel (discussed further in the "Adequacy" subsection above), the Seventh Circuit affirmed the district court's determination that class certification was appropriate. Reliable Money II, 704 F.3d at 502.

Here, as in the Reliable Money case, there are issues which may arise concerning whether individual class members gave express consent or invitation to receive fax advertisements, and whether individual class members had existing business relationships with defendants.

Nevertheless, I conclude that those individualized issues do not predominate over the common questions presented here, considering the scope of this action as a whole, and given, in particular (1) the lack of record evidence suggesting that anyone along the contact-information chain -- that is, anyone at InfoUSA, B2B, or EPSI (including defendant Taylor) -- sought or received express permission or invitation from any of the 4,521 recipients to receive fax advertisements; and (2) the small percentage of the sample (and thus the likely-small

-44-

percentage of entire 4,521 recipients) with whom Hawk Valley or
the Taylors had done or were doing business as of June 2006.

In Holtzman v. Turza, 2009 U.S.Dist. LEXIS 95620
(N.D.Ill. Oct. 14, 2009)("Holtzman I"), the district court
rejected the argument that individual issues (including the
issue of prior consent) predominated in a TCPA unsolicited-fax-
advertisement case where defendant provided a third-party
broadcaster (who ultimately executed the fax transmission on
defendant's behalf) with defendant's own personally-developed
list of contacts and a list of contact information purchased
from a professional organization.  Holtzman I, 2009 U.S.Dist.
LEXIS 95620, at *2-3, and *15-19.

The United States Court of Appeals for the Seventh
Circuit affirmed the district court's decision to grant class
certification.  In doing so, the Seventh Circuit noted that
"[c]lass certification is normal in litigation under § 227 [of
the TCPA] because the main questions, such as whether a given
fax is an advertisement, are common to all recipients."
Holtzman II, 728 F.3d at 684.

For the reasons expressed above, I find that the
Reliable Money and Holtzman cases provide persuasive authority
to support granting Plaintiff's Motion for Class Certification.

In Gene and Gene LLC v. BioPay LLC, 541 F.3d 318
(5th Cir. 2008)("Gene and Gene I"), the United States Court of

-45-

Appeals for the Fifth Circuit reversed the district court's decision to grant plaintiff's motion for class certification in a TCPA unsolicited-fax case.  Gene and Gene I, 541 F.3d at 326-329.[85]

In Gene and Gene I, The Fifth Circuit held that the district court abused its discretion in granting class certification because, the Circuit Court stated, based upon the facts of that case (including the fact that certain recipients of the fax sent by BioPay had provided their fax numbers to BioPay directly at trade shows and/or through BioPay's website), id. at 327-328, "the predominant issue of fact is undoubtedly one of *individual* consent."  Id. at 327.

The Fifth Circuit reached its conclusion that the individual issue of consent by each class member predominated (and, thus, rendered class certification inappropriate) based upon a distinction it drew between Forman v. Data Transfer,

---

[85]       On remand from Gene and Gene I, the district court re-opened discovery and permitted plaintiff to file a motion to re-certify a class, which motion to re-certify was granted.  Gene and Gene, LLC v. BioPay, LLC, 269 F.R.D. 621, 627 (M.D.La. 2009)("Gene and Gene II").  BioPay took a second interlocutory appeal to the Fifth Circuit challenging the district court's ruling in Gene and Gene II.  On that second interlocutory appeal, the Fifth Circuit determined that it had already held that the predominance requirement under Rule 23(b)(3) was not satisfied, and that, based upon the facts and procedural posture of the case, the law-of-the-case doctrine did not permit re-litigation of the class certification question.  Gene and Gene, L.L.C. v. BioPay, L.L.C., 624 F.3d 698, 703 (5th Cir. 2010)("Gene and Gene III").

Inc., 164 F.R.D. 400 (E.D.Pa. 1995)(Giles, J.), and Kavu v.

Omnipak Corporation, 246 F.R.D. 642 (W.D.Wash. 2007).[86]

        Specifically, the Fifth Circuit explained that the

issue of consent to receive fax advertisements was susceptible

to common proof (and, thus, that class certification was

appropriate) in Kavu "because [defendant] Omnipak had obtained

all of the fax recipients' fax numbers from a single purveyor of

such information" and because, in light of that fact, a common

method of proving lack of consent was available to [plaintiff]

Kavu.  Gene and Gene I, 541 F.3d at 327-328 (citing Kavu,

246 F.R.D. at 645).  By contrast, according the Fifth Circuit,

the gravamen of the class complaint in the Forman case arose

from "a series of individual transmissions under individual

circumstances".  Id. at 328 (quoting Forman, 164 F.R.D. at 404).

        The Fifth Circuit stated explicitly that violations of

47 U.S.C. § 227(b)(1)(C) "are not *per se* unsuitable for class

resolution" and that the factual circumstances of each case will

determine whether class certification is proper.  Id. at 328.

        While, as discussed above, I find the determination in

Reliable Money (a case involving a defendant who utilized B2B to

send a fax advertisement for defendant's services) to be

persuasive on the question of predominance, class certification

_____

[86]         Defendants here both cite the Forman case in their respective
initial opposition documents filed in response to Plaintiff's Motion for
Class Certification.

is also supported under the distinction between the _Forman_ and
_Kavu_ cases which was drawn by the Fifth Circuit in _Gene and
Gene I_ because the record evidence here demonstrates that
defendants EPSI and Taylor were not directly involved in culling
and compiling the fax numbers utilized in the June 17, 2006
transmission, and that B2B obtained the contact information
which it utilized in the June 17, 2006 fax transmission "from a
single purveyor of such information" -- that is, from InfoUSA.

*Scope of Authority*

Defendants contend that the question of whether a
particular class member is within the scope of the authority
given to B2B for B2B to send fax advertisements concerning
EPSI's Grass Grab-er is inherently individualized and weighs
against a finding that common questions predominate in this
action.

While this argument is not wholly meritless, it is
ultimately unavailing.  This is so because the second-stage
question highlighted by defendants -- that is, "Is X class
member within the scope of the authority granted to B2B?" --
necessarily requires the answer to an equally- if not more-
significant first-stage question -- namely, "What is the scope

of the authority given to B2B to send fax advertisements for the Grass Grab-er?"[87]

In Imhoff Investment, LLC v. SamMichaels, Inc., 2014 U.S.Dist. LEXIS 4965 (D.N.J. Jan. 15, 2014)("Imhoff II") -- an Opinion which defendants identified as supplemental authority supporting denial of class certification here -- the district court noted that the FCC includes in its definition of "sender" a person "on whose behalf" a fax broadcaster (there, as here, B2B), id. at *14 (quoting 47 C.F.R. § 1200(f)(10), and, held that that language includes a defendant who did not physically send a fax advertisement. Imhoff II, 2014 U.S.Dist. LEXIS 4965, at *14.

The district court further noted, correctly, that the relevant FCC regulations define a "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement" and that the FCC does not require a formal relationship in order to establish on-behalf-of liability. Id. at *14-15 (citing 47 C.F.R. § 1200(f)(10)).

Accordingly, the district court concluded, a plaintiff asserting an unsolicited-fax-advertisement claim could rely upon ratification or apparent authority to establish a defendant's

---

[87]         Furthermore, the related question of "What, if any, liability under the TCPA attaches to defendant EPSI and Taylor for fax advertisements sent by B2B at defendants' behest but to recipients outside the target group of 'golf-course superintendents'?", is a common question of law.

vicarious liability for the fax transmission of a third-party
transmitter under common law agency principles.  Imhoff II,
2014 U.S.Dist. LEXIS 4965, at *15.

Here, while defendants raise this scope-of-authority
argument in opposition to the predominance requirement, the
factual and legal questions concerning the existence, nature,
and extent of the relationship between B2B and either defendant
are common questions.  See id. at *15-20.  When those common
questions are weighed against the second-stage question raised
by defendants, I conclude that common questions -- that is, the
first-stage inquiry -- predominate.

*Opt-Out-Notice Dispute*

A dispute arose during closing arguments at the
November 8, 2013 class-certification hearing which became the
subject of post-hearing briefing by the parties.  That dispute
concerns the operative date of the so-called opt-out-notice
requirement added to section 227(b)(1)(C) of the TCPA, see
47 U.S.C. § 227(b)(1)(C)(iii), as amended by the Junk Fax
Prevention Act of 2005.[88]

---

[88]        Act of July 9, 2005, P.L. 109-21, 119 Stat. 395, §§ 1-4 ("JFPA"),
amending 47 U.S.C. § 227.

        Specifically, and as pertinent to this matter, section 2(c) of
the JFPA provided:

        REQUIRED NOTICE OF OPT-OUT OPPORTUNITY.—Section 227(b)(2) of the
        Communications Act of 1934 (47 U.S.C. 227(b)(2)) is amended —

                        (Footnote 88 continued):

(1) in subparagraph (B), by striking "and" at the end;

(2) in subparagraph (C), by striking the period at the end and inserting a semicolon; and

(3) by adding at the end the following:

"(D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if—

"(i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

"(ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

"(iii) the notice sets forth the requirements for a request under subparagraph (E);

"(iv) the notice includes—

"(I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

"(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

"(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

"(vi) the notice complies with the requirements of subsection (d);".

Junk Fax Prevention Act of 2005, § 2(c).

The parties do not dispute that the JFPA was enacted
on July 9, 2005 (prior to the June 17, 2006 fax transmission at
issue here) or that the regulations subsequently promulgated by
the Federal Communications Commission concerning the opt-out
notice required by section 227(b)(2)(D)-- as amended by the JFPA
-- became effective on August 1, 2006 (after the June 17, 2006
fax transmission at issue here).  As the parties each recognize,
"[i]t is well-established that, absent a clear direction by
Congress to the contrary, a law takes effect on the date of its
enactment."  Gozlon-Peretz v. United States, 498 U.S. 395,
111 S.Ct. 840, 112 L.Ed.2d 919 (1991).

Plaintiff contends that the JFPA contains no such
clear direction from Congress and, accordingly, that the opt-
out-notice requirement imposed by sections 227(b)(1)(C)(iii) and
227(b)(2)(D) took effect immediately upon enactment of the JFPA
and prior to the June 17, 2006 fax transmission at issue in this
case.

Defendants contend that the JFPA contains a clear
directive from Congress that the amendments to section 227
provided in the JFPA (including the opt-out-notice requirement)

would not take effect until regulations promulgated by the FCC
pursuant to the JFPA became effective.[89]

Section 2(h) of the JFPA provides: "REGULATIONS.—
Except as provided in section 227(b)(2)(G)(ii) of the
Communications Act of 1934 (as added by subsection (f)), not
later than 270 days after the date of enactment of this Act, the
Federal Communications Commission shall issue regulations to
implement the amendments made by this section."  JFPA, § 2(h).

While defendants are correct (and plaintiff does not
contest) that the JFPA created a mandatory obligation on the FCC
to promulgate regulations implementing the JFPA's amendments to
the TCPA, it is similarly undisputed that Congress did not state
explicitly in the JFPA that the obligations established in
section 227(b)(1)(C) of the TCPA by the JFPA would not take
effect until any such implementing regulations subsequently
promulgated by the FCC became effective.

When defendants sought leave at the class certifi-
cation hearing to brief the issue of the applicability and
effective-date of the opt-out-notice requirement, counsel for
defendant EPSI suggested that defendants would present authority

---

[89]         However, I note that defendant Taylor previous stated -- as part
of her argument that the established-business-relationship presents an
individualized issue which predominates -- that a fax advertisement "also
needs to have an 'opt-out' [notice], which the fax at issue here did."
(Taylor Memorandum at page 9.)  This contention is somewhat at odds with
defendant Taylor's subsequent argument that no opt-out notice was required at
the time the fax at issue was sent.

clearly and unequivocally demonstrating that the opt-out-notice requirement in section 227(b)(1)(C)(iii) did not take binding effect until the implementing regulations became effective on August 1, 2006.[90]

Instead, defendants' joint memorandum on this issue relied upon the general proposition set forth by the United States Supreme Court in Gozlon-Peretz, supra; the Opinion of the United States Court of Appeals for the Second Circuit in Sweet v. Sheahan, 235 F.3d 80 (2d Cir. 2000), which addressed the effective-date of certain lead-paint disclosure requirements; and a dissent by Associate Justice Richard M. Mosk of the Court of Appeal of California, Second Appellate District in McCarthy v. CB Richard Ellis, Inc., 94 Cal.Rptr.3d 109, 127-132 (Cal.Ct.App. 2009), which relied substantially upon Sweet, supra, and analogized the JFPA to the lead-paint disclosure statute at issue in Sweet.

Plaintiff's post-hearing memorandum concerning the effective date of the opt-out-notice requirement similarly opens with the Gozlon-Peretz, supra.  However, plaintiff then proceeds to effectively distinguish the statutory provision at issue in Sweet from section 2(c) of the JFPA (which requires the opt-out-

---

[90]        Transcript of Hearing on Plaintiff's Motion [for Class Certification Held] Before the Honorable Judge James Knoll Gardner on November 8, 2013 (Document 132), at pages 76-77.

notice as a necessary requirement to eliminate liability for an otherwise-unsolicited fax advertisement).[91]

In addition to distinguishing Sweet, plaintiff advances the Opinion of the Court of Appeals of Ohio, Sixth District in Cardinal Partners, Ltd. v. Fernandez Discipline, LLC, 2010 WL 4683700 (Ohio Ct.App. Nov. 19, 2010), to support the proposition that the opt-out notice became effective immediately upon enactment of the JFPA.

Although the trial court there did rule that both the existing-business-relationship defense and the opt-out-notice requirement did not become effective until August 1, 2006, the appellate court did not resolve the issue disputed here. Rather, the Ohio intermediate appellate court concluding that "[w]hether we apply the [FCC] rules extant from the time of the TCPA or look to the law as established by the JFPA, *an established business exception to the junk fax advertisement ban existed at the time [defendant] sent its fax*." Cardinal Partners, 2010 WL 4683700, at *6, ¶ 35 (emphasis added).

---

[91]     Plaintiff does so by noting that the statute at issue in Sweet did not actually impose any direct obligations or duties upon sellers and lessors of property to disclose information concerning lead paint, but rather imposed an obligation upon the United States Environmental Protection Agency to promulgate regulations requiring the disclosure of information concerning lead-paint hazards.

     By contrast, according to plaintiff, the requirements for the opt-out-notice are set forth in the TCPA as amended by the JFPA, 47 U.S.C. § 227(b)(1)(c), (2)(D)(E).   Therefore, plaintiff argues, the June 17, 2006 fax advertisement was required to satisfy the opt-out-notice requirement provided in the statute, prior to the effective date of any future regulations.

The above is set forth at some length to say that the parties have not identified any binding (or highly persuasive) authority concerning the effective date of the opt-out-notice requirement.  Moreover, the dispute between the parties concerning the applicability of the opt-out-notice requirement to the June 17, 2006 fax transmission is substantially less clear-cut than suggested by the parties at the hearing or in their post-hearing memoranda.

In light of the foregoing, and because the question of whether certain class members had an existing business relationship with defendants at the time of the June 17, 2006 fax would not predominate over the common questions presented here even if defendants are correct and they are not foreclosed from asserting the established business relationship exception as the result of an insufficient opt-out notice, see Reliable Money I, 281 F.R.D. at 330, I decline to resolve that dispute at this time.[92]

For all of the reasons expressed above, I conclude that common questions predominate in this matter.

---

[92]    Although not discussed by either party concerning the opt-out-notice issue, I note that in Gene and Gene I, the Fifth Circuit stated that the JFPA materially amended the TCPA and the Fifth Circuit identified July 9, 2005 as the "effective date" of the amendments to the TCPA affected by the JFPA, Gene and Gene I, 541 F.3d at 322 n.1, suggesting that the opt-out-notice requirements set forth in the statute itself became effective upon enactment.

-56-

<u>Superiority</u>

An Opinion of United States District Judge Catherine D. Perry provides a thoughtful and concise discussion of the superiority issue as it pertains to a TCPA unsolicited-fax action, and I adopt and incorporate her ruling and analysis here.  <u>See</u> <u>St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.</u>, 2013 WL 6498245, at *10-11 (E.D.Mo. December 11, 2013).

> The second prong of the Rule 23(b)(3) type of class action requires the class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy."  The Supreme Court has stated that the policy consideration behind Rule 23(b)(3) is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." [<u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)].

> Factors relevant to a court's inquiry into superiority include: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against the class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.  <u>See</u> Fed.R.Civ.P. 23(b)(3)(A)-(D).  In this case, there is no evidence that other duplicative litigation is ongoing.  Because the statutory damages available to each individual class member are small -- at most $1500 per violation -- it is unlikely that the class members have interest in individually controlling the prosecution of separate actions.  This action involves thousands of plaintiffs, each with a relatively small, nearly identical claim, who might not otherwise seek or obtain relief absent a class action.  This court

will only need to apply federal law, not multiple
state laws.  Although there may be some administrative
tasks for the parties, such as matching fax numbers to
updated contact information, that is not enough to
outweigh the benefits of treating these claims all
together.  All in all, a class action is superior to
other methods of adjudicating this controversy.

St. Louis Heart Center, 2013 WL 6498245, at *10-11.


## CONCLUSION

For all of the reasons expressed above, I grant

Plaintiff's Motion for Class Certification and certify the

proposed class.